## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RENWICK CLIVENS, LOUIS ROACH,** | * | |
| **NORMAN JACKSON, JEFFREY** | * | **CIVIL ACTION NO.** |
| **HENDERSON, RODNEY BRIDGES,** | * | |
| **and HAROLD SEALS,** | * | |
| | * | **JUDGE** |
| *Plaintiffs* | * | |
| | * | |
| **VERSUS** | * | **MAGISTRATE JUDGE** |
| | * | |
| **RAY BRANDT NISSAN, INC.,** | * | |
| *Defendant* | * | **JURY TRIAL DEMANDED** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## <u>COMPLAINT</u>

**NOW INTO COURT,** through undersigned counsel, come Renwick Clivens, Louis Roach, Norman Jackson, Jeffrey Henderson, Rodney Bridges, and Harold Seals, Plaintiffs herein, who respectfully assert claims against Defendant, Ray Brandt Nissan, Inc., alleging the following:

### JURISDICTION AND VENUE

1.

Subject matter jurisdiction of this Honorable Court is based upon 28 U.S.C. § 1331, as Plaintiffs' claims against Defendant arise under Title VII of the Civil Rights Act of 1964, as amended. The claims based on Louisiana state law are so closely related to claims raising federal questions that they form part of the same case or controversy, such that this Honorable Court has supplemental jurisdiction over said matters pursuant to 28 U.S.C. § 1367.

1

2.

Venue is proper in this Court because the violations of federal and state laws upon which this Complaint is based occurred in Jefferson Parish, which is located in the Eastern District of the United States District Courts of Louisiana.

**PARTIES**

3.

The Plaintiffs bringing this action are as follows:

1) Renwick Clivens (hereinafter "Mr. Clivens" or "Clivens"), an African-American male of the full age of majority who resides and is domiciled in Orleans Parish, State of Louisiana;

2) Louis Roach (hereinafter "Mr. Roach" or "Roach"), an African-American male of the full age of majority who resides and is domiciled in Jefferson Parish, State of Louisiana;

3) Norman Jackson (hereinafter "Mr. Jackson" or "Jackson"), an African-American male of the full age of majority who resides and is domiciled in St. Charles Parish, State of Louisiana;

4) Jeffrey Henderson (hereinafter "Mr. Henderson" or "Henderson"), an African-American male of the full age of majority who resides and is domiciled in Jefferson Parish, State of Louisiana;

5) Rodney Bridges (hereinafter "Mr. Bridges" or "Bridges"), an African-American male of the full age of majority who resides and is domiciled in Orleans Parish, State of Louisiana; and

6) Harold Seals (hereinafter "Mr. Seals" or "Seals"), an African-American male of the full age of majority who resides and is domiciled in Jefferson Parish, State of Louisiana.

4.

Made Defendant herein is Ray Brandt Nissan, Inc. (hereinafter "Nissan" or "Defendant"), an entity created and authorized to do business and doing business under the laws of the State of Louisiana, including the operation of an automobile dealership located at 4000 Lapalco Blvd., Harvey, Jefferson Parish, Louisiana 70058.

5.

Throughout their employment with Defendant, each of the Plaintiffs performed his respective job duties without complaint and carried out his responsibilities in strict compliance with Defendant's policies and procedures, always exceeding Defendant's performance expectations.

6.

Notwithstanding Plaintiffs' job performance, Defendant, without lawful reason, explanation or justification, discriminated against Plaintiffs on the basis of their race, African-American.  Defendant reduced the salaries of Mr. Clivens, Roach, Jackson, Henderson and Bridges to the point where they were forced to resign and, to mask its intent, Defendant promoted Mr. Seals to a position for which he was not qualified or trained, simply because of his race. After promoting Mr. Seals, four months later, Defendant turned around and fired Mr. Seals because he was not qualified for the position to which he was promoted.

**FACTUAL BACKGROUND**

7.

In or about October of 1997, Defendant hired Kendall Bussey (hereinafter "Mr. Bussey"), an African-American male, as a Salesperson at its Nissan dealership. Within ninety days

3

thereafter, because of his exemplary performance, Mr. Bussey was promoted to the Used Car Manager's position.

8.

In or around 2002, Defendant's dealership was underperforming in terms of car sales and profitability. As a result, in an attempt to effectuate change, Defendant decided to promote Mr. Bussey to become General Manager of its Nissan dealership.

9.

In 2003, one year after Mr. Bussey became General Manager, Defendant's Nissan dealership, in terms of sales, was ranked among the Top 10 Nissan Dealerships in the country.

10.

In an effort to maintain the success, Mr. Bussey began to build a productive team of staff members at Defendant's dealership by hiring and/or promoting each of the Plaintiffs, all of whom worked their way up within the Defendant's store.

11.

Because of Mr. Bussey's leadership and Plaintiffs' productivity, by 2013, Defendant's dealership, in terms of sales, was ranked among the Top 10 Nissan Dealerships in the country three additional times.  In fact, despite the size of New Orleans' Metro area population, in 2013, regarding profitability, Defendant's dealership was recognized as one of the Top 25 Nissan Dealerships in the country.

12.

Notwithstanding Defendant's profitability and performance, on or about January 2, 2014, without any reason, justification or explanation, Defendant abruptly terminated Mr. Bussey.

13.

Defendant immediately replaced Mr. Bussey with Chad Manuel (hereinafter "Manuel"), a Caucasian male. Following this change in management, Defendant's treatment of Plaintiffs took a turn for the worse.

14.

Shortly after becoming a General Manager, Manuel convened a meeting to inform Defendant's employees that he had decided to implement significant changes. Manuel began the meeting by saying, *"Things will be different now that I am here. Some of you are not going to be here."*

## AFRICAN-AMERICAN FINANCE PERSONNEL

### *Renwick Clivens*

15.

In or around January of 2009, Mr. Clivens began his employment with Defendant as a Finance Manager. That same year, because of his job performance, Mr. Clivens was promoted to Defendant's Finance Director's position.

16.

As a Finance Director, Ms. Clivens was earning approximately 5% of the dealership's gross income each month.

17.

Despite Mr. Cliven's productivity as Defendant's Finance Director, in January of 2014, shortly after Defendant terminated Mr. Bussey, Manuel reduced Mr. Clivens' monthly salary by 43%.

5

18.

As a result of the reduction in pay, Mr. Clivens was unable to meet his financial responsibilities and thus, Mr. Clivens was forced to resign.

19.

Defendant replaced Mr. Clivens with a Caucasian employee.

### *Louis Roach*

20.

In or around October of 2013, Mr. Roach began his employment with Defendant as a Credit Acceptance Manager. Prior to joining Defendant, in the period between January 2000 and June 2012, Mr. Roach spent approximately eight years as a Salesperson at another Ray Brandt dealership, Ray Brandt Dodge.

21.

Due to his experience and productivity, Mr. Roach was paid according to Defendant's executive pay plan, which included a monthly salary of $1,200 and a draw of $1,500 on the fifteenth and last day of each month plus commission.

22.

Despite Mr. Roach's contributions to Defendant's success, in the beginning of January of 2014, soon after Defendant terminated Mr. Bussey, Manuel took Mr. Roach off of Defendant's executive pay plan and placed him on Defendant's base pay plan, which was specifically designed for less experienced and less qualified employees.

23.

 As a result, Defendant took away Mr. Roach's monthly salary and reduced his bi-monthly draw to $800.  Notably, Manuel did not eliminate or reduce Defendant's compensation of similarly situated Caucasian employees.

24.

As a result of the reduction in pay, Mr. Roach was unable to meet his financial responsibilities and thus, in or around January of 2014, Mr. Roach was forced to resign.

**AFRICAN-AMERICAN SALESPERSONS**

***Norman Jackson***

25.

In or about 1998, Mr. Jackson began his employment with Defendant as a Salesperson. In or around 2007, Mr. Jackson briefly switched employers, only to come back to Defendant's dealership in or around July of 2008.

26.

Due to his vast experience and productivity as a salesman, Mr. Jackson was paid according to a "special" pay plan which differed from the pay plan given to other Defendant salespersons. Mr. Jackson's pay plan consisted of a monthly salary of $1,500 and a 37.8% sales commission on cars sold.

27.

Without considering Mr. Jackson's productivity, in January of 2014, soon after Defendant terminated Mr. Bussey, Manuel eliminated Mr. Jackson's monthly salary and reduced his sales commission to 25%.

28.

As a result of the reduction in pay, Mr. Jackson was unable to meet his financial responsibilities and, thus, Mr. Jackson was forced to resign.

29.

Defendant replaced Mr. Jackson with a Caucasian employee.

### *Jeffrey Henderson*

30.

Mr. Henderson's first period of employment with Defendant began in or around November of 2001 and lasted approximately 24 months. A couple of years thereafter, Mr. Henderson again briefly worked for Defendant from 2005 until the latter part of 2006.

31.

In or around November of 2009, after hearing positive reports about Mr. Bussey's management of Defendant's dealership, Mr. Henderson decided to return to work for Defendant as an Executive Salesperson.

32.

Familiar with Mr. Henderson's vast experience and qualifications, Defendant offered Mr. Henderson an executive pay plan.

33.

Nevertheless, without any consideration for Mr. Henderson's productivity and contributions to Defendant's success, in January of 2014, soon after Defendant terminated Mr. Bussey, Manuel took away Mr. Henderson's executive pay plan.

34.

Because Mr. Henderson was unable to meet his financial responsibilities under his "new" pay plan, in or around January of 2014, Mr. Henderson was forced to resign.

35.

Defendant replaced Mr. Henderson with a Caucasian employee.

### ***Rodney Bridges***

36.

In February of 1993, Mr. Bridges began his employment with Defendant as a Salesperson.

37.

Mr. Bridges was paid according to a pay plan which included a monthly salary of $1,000 along with a 30% sales commission.

38.

Again, without any consideration for Mr. Bridges productivity and contributions to Defendant's success, in January of 2014, soon after Defendant terminated Mr. Bussey, Manuel eliminated Mr. Bridges' monthly salary of $1,000 and reduced his sales commission from 30% to 20%.

39.

As a result of the reduction in pay, Mr. Bridges was unable to meet his financial responsibilities and thus, was forced to resign.

40.

Defendant replaced Mr. Bridges with a Caucasian employee.

## DEFENDANT'S CONDUCT POST TERMINATION/CONSTRUCTIVE DISCHARGE

### *Harold Seals*

41.

After Defendant got rid of nearly all of its African American managers and/or senior supervisors, Defendant, based solely on race, promoted Mr. Seals to its Finance Manager's position.

42.

Late January 2014, Manuel summoned Mr. Seals to his office and said, "*This is your lucky day. We're going to give you a shot as a Finance Manager.*"

43.

Prior to being named a Finance Manager, Mr. Seals was Defendant's Internet Sales Manager. Mr. Seals had no prior experience in finance whatsoever, nor did the Defendant offer him any training, formal or otherwise. In fact, Mr. Seals was not even allowed to "shadow" any of Defendant's senior finance personnel.

44.

Notwithstanding Mr. Seals' promotion, Defendant paid Mr. Seals approximately $60,000 less per annum than certain similarly situated Caucasian employees, namely, Craig Pesses and Steve Kost.

45.

Nevertheless, despite Mr. Seals' efforts and unequal pay, on or about May 1, 2014, Mr. Seals was terminated because he did not know how to properly complete Defendant's finance documents which he was never mentored or trained to do.

46.

Defendant replaced Mr. Seals with a Caucasian employee.

47.

Interestingly, after terminating Mr. Seals, Defendant allegedly discovered evidence indicating that Mr. Seals violated Defendant's workplace policy in his position as Finance Manager.

48.

Because of the unlawful treatment by Defendant's managers, employees, and agents, each Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.   As a result, on or about December 9, 2016 and December 20, 2016, the EEOC issued letters of  "Determination" finding reasonable cause to believe that Defendant, according to Title VII of the Civil Rights Act of 1964, as amended, treated Plaintiffs unlawfully because of their race.

49.

Thereafter, on or about February 08, 2017, the EEOC forwarded to each Plaintiff a "Notice of the Right to Sue." Plaintiffs received their notices on or about May 13, 2017. Accordingly, Plaintiffs have met all administrative prerequisites for bringing of this action.

50.

At all times relevant herein, Defendant was responsible for the acts of its employees.

51.

At all times relevant herein, Defendant was liable for the conduct described herein, as carried out by its managers, employees, or agents under the doctrine of Respondeat Superior.

52.

All of the actions complained of herein were undertaken with malice and/or reckless indifference to Plaintiffs' state and federally protected rights.

## CAUSE OF ACTION

53.

In violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the Louisiana Employment Discrimination Law, as amended by Act 1409, 1997, Defendant engaged in unlawful employment practices consisting of, but not limited to, intentional discriminatory treatment causing Plaintiffs to be subjected to discriminatory terms and conditions of employment because of their race, African-American.

## DAMAGES

54.

As a result of the unlawful actions described and set forth herein, Defendant is liable unto each of the Plaintiffs for his damages, including back pay and front pay; lost benefits; mental anguish; humiliation and embarrassment; loss of reputation; loss of enjoyment of life; foreseeable and unforeseeable damages; compensatory damages; punitive damages; prejudgment interest; attorney's fees and all costs of these proceedings.

## JURY DEMAND

55.

Plaintiffs demand trial by jury on all issues so triable herein.

**WHEREFORE**, Plaintiffs, Renwick Clivens, Louis Roach,  Norman Jackson, Jeffrey Henderson , Rodney Bridges, and Harold Seals, pray that Defendant, Ray Brandt Nissan, Inc., be duly cited and required to appear and answer Plaintiffs' Complaint and Jury Demand and, after

all due proceedings and legal delays, there be judgment rendered herein in favor of each of the

Plaintiffs and against Defendant as detailed in the foregoing Complaint and Jury Demand, in an

amount reasonable in the premises to compensate each, together with legal interest from the date

of judicial demand, all costs of these proceedings, attorneys' fees and for any and all general and

equitable relief deemed appropriate by this Honorable Court under the circumstances.

 

                        Respectfully submitted,

                        <u>s/G. Karl Bernard</u>
                        G. Karl Bernard (#24294)
                        G. KARL BERNARD & ASSOCIATES, LLC
                        1615 Poydras Street, Suite 220
                        New Orleans, Louisiana  70112
                        Telephone:     (504) 412-9953
                        Facsimile:      (504) 412-8088
                        karl.bernard@karlbernardlaw.com

                        **Attorney for Plaintiffs**